IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| DAVID C. CLIFTON, ) | |
| ) | |
| Plaintiff, ) | C/A No. 3:12-cv-02074-MBS |
| ) | |
| vs. ) | |
| ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION**

This matter is before the court on a Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56(a) by Defendant Nationstar Mortgage, LLC ("Defendant") on November 3, 2014. ECF No. 80. Plaintiff David C. Clifton ("Plaintiff") filed a response in opposition on November 20, 2014. ECF No. 83. Defendant filed a reply to Plaintiff's response on December 4, 2014. ECF No. 89. On November 20, 2014, Plaintiff also filed a Motion to Strike Affidavits submitted with Defendant's Motion for Summary Judgment, which motion was filed pursuant to Fed. R. Civ. P. 56(c)(4). ECF No. 84. Defendant filed a response in opposition to the motion to strike on December 8, 2014. ECF No. 93. Plaintiff filed a reply to Defendant's response in opposition on December 17, 2014. ECF No. 95. A hearing was held on the Motion for Summary Judgment and the Motion to Strike on March 25, 2015.

**I. FACTS**

On January 6, 2011, Plaintiff filed a lawsuit in this court to address alleged questionable servicing of the note and mortgage on his home by Defendant. *See Clifton v. Nationstar Mortgage, LLC*, C/A No. 3:11-0050-MBS (D.S.C. Jan. 6, 2011). The case was dismissed on

February 7, 2012, as a result of a settlement agreement entered into by the parties. On December 29, 2011, the parties entered into a settlement agreement and release in which Defendant agreed to modify the terms of the note and mortgage as well as to take certain actions to delete derogatory credit reporting pertaining to plaintiff. ECF No. 10 ¶ 9. In exchange, Plaintiff agreed to release Defendant from any liability and agreed to pay $4,000 to Defendant at the time of executing the agreement. ECF No. 7-3. According to the terms of the settlement agreement, Defendant was to apply the $4,000 payment and other payments held in a suspense account to the principal balance of the loan. ECF No. 80-10 ¶ B.5. Plaintiff executed the settlement agreement on December 29, 2011, and forwarded the signed agreement to Nationstar as well as two checks in the amount of $5,228.64 and $614.32. ECF No. 83-5.

In April of 2012, Defendant presented Plaintiff with a loan modification agreement that Plaintiff contends differed substantially from the terms contained in the settlement agreement. ECF No. 10 ¶ 12. Specifically, the loan modification continued to note the unpaid principal balance as $96,485.99, which was the principal balance noted in the settlement agreement prior to Plaintiff's payments starting in December of 2011. ECF No. 80-11 ¶ 1. Plaintiff refused to sign the loan modification agreement based on advice from counsel. ECF No. 60 at 2. According to Plaintiff, Defendant has also failed to correct its credit reporting in compliance with the settlement agreement because in February of 2012, Defendant reported that Plaintiff's account was over 120 days past-due with foreclosure proceedings. ECF No. 10 ¶ 14. Plaintiff disputed this reporting through a Fair Credit Reporting Act ("FCRA") Procedure. *Id.* at ¶ 15.

On July 23, 2012, Plaintiff filed a complaint in this court alleging that (1) Defendant violated the FCRA; (2) Defendant breached the settlement agreement; (3) Defendant breached

its implied duty of good faith and fair dealing; (4) Defendant converted Plaintiff's loan payments and refused to apply them to his mortgage loan; and (5) Defendant engaged in unfair trade practices. *Id.* Defendant filed a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) on August 18, 2012. ECF No. 7. Plaintiff filed an amended complaint to include that the amount in controversy was in excess of $75,000. ECF No. 10. Defendant filed another motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ECF No. 14. The court declined to dismiss the case for lack of jurisdiction, but did dismiss Plaintiff's claim for breach of the implied duty of good faith and fair dealing, Count 3, for failure to state a claim upon which relief could be granted. ECF No. 19. Defendant filed an answer to Plaintiff's amended complaint on March 4, 2013. ECF No. 20. In the motion for summary judgment, Defendant requests that this court enter judgment in its favor on all remaining claims.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49, (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

## III. ANALYSIS

*A. Motion for Summary Judgment*

**1. Conversion (Count 4)**

Plaintiff alleges that Defendant continues to hold payments made by Plaintiff in a "suspense" account without applying those payments to Plaintiff's unpaid principal balance. ECF No. 10 at ¶ 40-41. According to Plaintiff, these actions by Defendant constitute conversion because the settlement agreement indicated that the payments made by Plaintiff would be applied to the unpaid principal balance. *Id.* at ¶ 42; ECF No. 80-10 ¶ B.5. Defendant asserts there is a provision in Plaintiff's mortgage that permits Defendant to hold payments made by Plaintiff, without applying them to the balance, until Plaintiff makes payments to bring the loan current. ECF No. 80-5 at 4 ¶ 1. According to Defendant, its actions cannot constitute conversion as a matter of law because it has the right to Plaintiff's payments and has the right to hold those payments in a "suspense" account.

Conversion is the unauthorized exercise of ownership over the personal property of another. *Richardson's Restaurants, Inc. v. Nat'l Bank of South Carolina*, 403 S.E.2d 669, 672 (S.C. Ct. App. 1991). Conversion cannot arise from the defendant's exercise of a legal right over the property. *Id.* In *Brannon v. Palmetto Bank*, 638 S.E.2d 105, 109 (S.C. Ct. App. 2006), the South Carolina Court of Appeals reversed a trial court's decision in failing to enter a directed verdict in Palmetto Bank's favor on a conversion claim where Palmetto Bank removed funds from the plaintiffs' account to satisfy a mortgage obligation. In *Brannon*, the plaintiffs bought a house out of foreclosure from Palmetto Bank, and the monetary obligation was secured by a mortgage lien. *Id.* at 107. The mortgage agreement required the plaintiffs to keep the home insured, and permitted Palmetto Bank to receive any indemnity owed upon the insurance policy even if Palmetto Bank was not named on the policy. *Id.* Subsequently, the plaintiffs' home was destroyed by fire and they received a check from the insurance carrier, which they deposited into

an account at Palmetto Bank. Soon after the deposit was made, Palmetto Bank withdrew funds from the account to pay off the mortgage debt. *Id.* The trial court declined to enter a directed verdict in favor of the bank, but the appellate court reversed, noting that the bank could not be liable for conversion of funds deposited into an account at the bank because those funds became part of the bank's general account against which the depositor received credit. *Id.* (citing *Richardson's Restaurants*, 403 S.E.2d at 672). The court further explained that the bank could not be held liable for conversion under such circumstances even though the depositor intended to use the funds for a particular purpose. *Id.* at 109. The court also noted that the position was bolstered by the "set off" provision allowing Palmetto Bank to apply insurance funds to the payment of the mortgage balance. *Id.*

Likewise, Plaintiff paid Defendant sums of money that were due to Defendant pursuant to a Loan Agreement. Once Plaintiff paid Defendant the money it was owed, those funds became part of Defendant's general account against which Plaintiff could receive credit. As in *Palmetto Bank*, Defendant cannot be held liable for conversion for placing funds in a "suspense" account as opposed to Plaintiff's loan account even though Plaintiff intended for those funds to be applied to his loan account. Furthermore, as in *Palmetto Bank*, there is a provision in Plaintiff's mortgage that permits Defendant to hold payments made by Plaintiff in a "suspense" account. Plaintiff makes no argument that Defendant is not entitled to the money that he paid them, nor does Plaintiff argue that Defendant is in possession of funds that Plaintiff is entitled to. He merely asserts that Defendant's misapplication of the funds in a manner contrary to the settlement agreement constitutes conversion, which, in this court's estimation, is a breach of contract issue. Plaintiff admitted during the hearing that his conversion claim might be better

addressed as a part of his breach of contract claim. Because Defendant cannot convert funds that it is authorized to possess, Plaintiff's claim for conversion fails as a matter of law. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for conversion.

### 2. FRCA, Breach of Contract, Unfair Trade Practices (Counts 1, 2, 5)

With respect to the remaining claims for violation of the FCRA, breach of contract, and violation of the South Carolina Unfair Trade Practices Act, this court finds that there are genuine issues of material fact still in dispute. Defendant has not demonstrated that it is entitled to judgment as a matter of law on those claims. Therefore, Defendant's motion for summary judgment is denied with respect to Counts 1, 2, and 5.

*B. Motion to Strike Affidavits in Support of Summary Judgment*

Defendant submitted a number of exhibits with its motion for summary judgment, including an affidavit made by its Rule 30(b)(6) deponent, Edward Hyne, ECF No. 80-3; and a declaration submitted by its former counsel, Brian Tatum, ECF No. 80-15. Plaintiff requested that the Hyne affidavit be stricken pursuant to Fed. R. Civ. P. 56(c)(4) because it was not based on personal knowledge of the affiant. Fed. R. Civ. P. 56(c)(4) requires that an affidavit used in support of a motion for summary judgment be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Here, Hyne's affidavit was based on his review of business documents generated in the ordinary course of business. The Fourth Circuit has indicated an unwillingness to accept affidavits in support of motions for summary judgment where the affiant's personal knowledge is based on a review of business records. *See Sutton v. Roth, LLC*, 361 F. App'x 543, 550 n.7 (4th Cir. 2010) (not reaching issue but noting "that the affidavit [of McDonald's

Corporation] is of questionable value because the affiant's 'personal knowledge' is based on a review of files rather than direct, personal knowledge of the underlying facts"). Citing *Sutton*, the Eastern District of Virginia held that an affidavit was not based on personal knowledge where that knowledge merely came from a review of documents as a Rule 30(b)(6) deponent. *Soutter v. Equifax Information Serv. LLC*, 299 F.R.D. 126, 132 (E.D. Va. 2014). Defendant argued that it only offered the Hyne affidavit so that the underlying exhibits could be admitted as business records. However, this court finds that in portions of the affidavit, Hyne did more than recite and refer to the underlying exhibits, but instead, he drew conclusions and offered his opinion about what those documents represented. Defendant conceded that the portions of the Hyne Affidavit that contained opinions should be stricken. Accordingly, any portion of the Hyne Affidavit that does not refer to a specific business record is stricken.

Plaintiff also requested that portions of the Tatum declaration be stricken because those portions contained inadmissible legal conclusions. Specifically, Plaintiff wanted the portions of the declaration that referred to Plaintiff's actions as a "breach" of the settlement agreement to be stricken. Defendant asserted that "breach" has no specialized legal meaning. The Fourth Circuit determined that legal conclusions can be identified by whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that in the vernacular." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). Merriam Webster defines breach as "an infraction or violation of a law, obligation, tie, or standard." Black's Law Dictionary (10th ed. 2014) defines breach as "a violation or infraction of a law, obligation, or agreement, esp. of an official duty or a legal obligation, whether by neglect, refusal, resistance, or inaction." The legal definition of breach does not have a separate or distinct meaning from

7

the definition of breach in the vernacular.  Accordingly, Tatum's frequent use of the word breach does not render his opinion an inadmissible legal conclusion.  However, Tatum also referred to Plaintiff's breach as a "material breach."  ECF No. 80-15 ¶¶ 11, 26.  Statements concerning "materiality" constitute legal conclusions because "material" has a specialized legal meaning.  *United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002).  The portions of the declaration that characterize Plaintiff's breach as material have a specialized legal meaning and are not admissible.  Therefore, paragraphs 11 and 26 are stricken.

Finally, Tatum also asserted that the requirement to pay escrow pursuant to the mortgage was not modified by the settlement agreement.  ECF No. 80-15 ¶¶ 8, 12.  This court finds that the determination regarding whether the escrow requirement was modified by the settlement agreement is a matter of contract interpretation.  Accordingly, those portions of the declaration that involved matters of contract interpretation are legal conclusions.  Thus, paragraphs 8 and 12 are stricken from the Tatum Declaration.

## IV. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.  Plaintiff's Motion to Strike Affidavits submitted with Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

As to the claims for violation of the FCRA, breach of contract, and violation of the South Carolina Unfair Trade Practices act, outlined in Counts 1, 2, and 5 of the complaint, respectively, the Motion for Summary Judgment is DENIED.

As to the cause of action for conversion outlined in Count 4 of the complaint, the Motion for Summary Judgment is GRANTED.

As to the Hyne Affidavit, the Motion to Strike Affidavits submitted with Defendant's Motion for Summary Judgment is GRANTED in part. Any portion of the affidavit that does not refer to a specific business record is stricken. The motion is DENIED with respect to paragraphs that reference a specific business record.

As to the Tatum Declaration, the Motion to Strike Affidavits submitted with Defendant's Motion for Summary Judgment is GRANTED with respect to paragraphs 8, 11, 12, and 26. The motion is DENIED with respect to the remaining paragraphs.

**IT IS SO ORDERED.**

    /s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

April 6, 2015
Columbia, South Carolina